IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SAMUEL F. QUATTRY, JR., ) | |
| As Trustee of the Samuel F. Quattry, Jr. ) | |
| Living Trust, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 6:18-cv-01112-CEM-DCI |
| ) | |
| COVINGTON SPECIALTY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MOTION OF DEFENDANT COVINGTON SPECIALTY INSURANCE
COMPANY FOR PARTIAL SUMMARY JUDGMENT**

Defendant Covington Specialty Insurance Company ("Covington"),
pursuant to Federal Rule of Civil Procedure 56(a), moves this Court for entry of
partial summary judgment as to the complaint of plaintiff Samuel F. Quattry, Jr., as
Trustee of the Samuel F. Quattry, Jr. Living Trust ("Quattry"). There are no genuine
issues of material facts and Covington is entitled to a ruling in its favor that if,
hypothetically, there is coverage under the Covington policy of insurance for the
damage to Quattry's building (which Covington denies), the co-insurance clause in
the Covington policy is enforceable to reduce the amount of insurance policy
proceeds that may be owed by Covington to Quattry.  In support of its motion for
partial summary judgment, Covington relies upon the following:

1.      A certified copy of the Covington policy of insurance, attached to this motion as Exhibit 1;

2.      The transcript of the deposition of Andrea Rickheim and the exhibits thereto, attached to this motion as Exhibit 2;

3.      Plaintiff's expert witness disclosure, Exhibit A, p. 26 of 176, attached to this motion as Exhibit 3;

4.      The affidavit of Betty S. Ojeda, attached to this motion as Exhibit 4;

5.      Property Records of the Orange County Property Appraiser for the addresses of 1011, 1015, 1021 and 1023 W. Colonial Dr., Orlando, Florida, 32804, attached to this motion as Exhibit 5;

6.      Covington's Statement of Material Facts As To Which There Exists No Genuine Issue To Be Tried contained herein;

7.      Covington's Memorandum of Law in Support of Its Motion For Partial Summary Judgment contained herein; and

8.      All other items of record as of the date of the Court' ruling on this matter.

### STATEMENT OF COVINGTON SPECIALTY INSURANCE COMPANY OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO GENUINE ISSUE FOR TRIAL

1.      At the time of the loss alleged by plaintiff Samuel F. Quattry Jr., as Trustee of the Samuel F. Quattry, Jr. Living Trust ("Quattry"), Covington insured Quattry under a renewal policy of commercial general liability and property damage

insurance, policy number VBA392726 00, effective May 1, 2016 through May 1, 2017 ("the Covington policy"), subject to the policy's terms, conditions, limitations and exclusions. (Certified copy of Covington policy, attached to Covington's motion for partial summary judgment as Exhibit 1).

2.     The Covington policy insured the property located at 1011 to 1023 W. Colonial Drive, Orlando, Florida 32804 ("the building"). (Covington policy, page 55 of 100; Commercial Property Coverage Part Declarations).

3.     At the time of the claimed loss, the Covington policy's coverage limit for property damage to the building was $500,000.00, subject to a $2,500.00 deductible and a 90% coinsurance provision. (Covington policy, page 55 of 100; Commercial Property Coverage Part Declarations).

4.     The Covington policy states as follows:

*IMPORTANT NOTICE*

**FLORIDA NOTICE – COINSURANCE CONTRACT**

**THE RATE CHARGED IN THIS POLICY IS BASED UPON THE USE OF THE COINSURANCE CLAUSE ATTACHED TO THIS POLICY, WITH THE CONSENT OF THE INSURED.**

\*     \*     \*

(Covington policy, p. 12 of 100; GBA 909009 0407). The Covington policy further states:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

3

\*      \*      \*

**F.  Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1.  Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the limit of Insurance for the property.  Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less.  For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

(Covington policy, p. 69 of 100; Florida Notice, GBA 909009 0407, p. 1 of 1;

Building and Personal Property Coverage Form, CP 00 10 10 12, p. 13 of 16).

5.      Quattry, in its application for insurance coverage with Covington, specifically requested that insurance for the building be provided pursuant to a 90% coinsurance arrangement. (Deposition of Andrea Rickheim, p. 48, l. 18-25; p. 49, l. 1-2; Exhibit 2 to motion for partial summary judgment. See also, Exhibit 1 to depo. of Rickheim).

6.      The property section of the application states that Quattry's building will be covered in the amount of $500,000.00 subject to 90% coinsurance. (Exhibit 1 to depo. Rickheim, page 5 of 11).

7.      Rickheim purchased the insurance policy for the property insured by Covington through the LRA Insurance Agency. (Depo. Rickheim, p. 46, l. 7-14, l.25; p. 47, l. 1-4). *(Aff'd. Ojeda, ¶ 7).*

8.      Rickheim dealt with Mr. Tomlinson [at LRA Insurance], who asked her questions about the property, to which she, Rickhem, provided honest information to the best of her knowledge. (Depo. Rickheim, p. 47, l. 5-13).

9.      Exhibit 1 to Rickheim's deposition is the commercial insurance application form (Depo. Rickheim. 48, l. 18-25; p. 49, l. 1-2), where she applied for insurance coverage for the properties owned by Quattry Properties, LLC and the Samuel F. Quattry, Jr. Living Trust. (Depo. Rickheim, p. 51, l. 15-25; p. 52, l. 1-4).

10.     Rickheim signed the insurance application form dated April 19, 2016. (Depo. Rickheim, p. 49, l. 3-11, 14; p. 50. l. 7-13; 24-25; p. 51, l. 1-4).

11.     Rickheim reviewed the application before she signed it, including the entire form and all of the information in it, and she made sure all of the information was correct. (Depo. Rickheim, p. 49, l. 15-17; p. 50, l. 1-3, 19-23; p. 51, l. 11-14; p. 54, l. 19-22; p. 55, l. 15-18).

12.     Rickheim and Mr. Tomlinson discussed the amount of insurance coverage that she was purchasing on behalf of Quattry Properties, LLC and the Samuel F. Quattry, Jr. Living Trust for the 1011 to 1023 West Colonial Drive location, and they agreed on $500,000.00 in total coverage for the buildings that comprise that location. (Depo. Rickheim, p. 52, l. 18-25; p. 53, l. 4-6).

13.     After the [Covington] policy was issued, Rickheim received the policy and reviewed it to make sure that the premium charged was correct and that the coverage and conditions of coverage provided were in line with her conversation with Mr. Tomlinson, and she confirmed that they were correct. (Depo. Rickheim, p. 55, l. 22-25; 56, l. 1-24).

14.     Quattry's damages expert, Jennifer Yurgen with Proscope Consulting, provided an estimate to repair the alleged damage to the portions of the building fully owned by Quattry (1023 West Colonial Drive). The estimate was in the amount of $181,096.54 for replacement cost value (RCV). (Plaintiff's expert witness disclosure, Exhibit A, p. 26 of 176; Exhibit 3 to motion for partial summary judgment).

15.     At the time of the loss, the total adjusted RCV of the building at 1011 to 1023 W. Colonial Drive, Orlando, Florida was $791,745.15 and the total actual cash value (ACV) of the building was $593,808.87. (Affidavit of Betty S. Ojeda, para. 6, Exhibit 4 to motion for partial summary judgment).

16.     The Orange County Property Appraiser assessed the 2016 market values of the 1011, 1015, 1021 and 1023 addresses (collectively the 1011 to 1023 building, or "the building") at $176,034.00, $173,430.00, $210,811.00 and $148,844.00, respectively, for a total assessed market value during the year 2016 of $709,119.00. (See, Property Records of the Orange County Property Assessor, attached as Exhibit 5 to Covington's motion for partial summary judgment).

17.     The Covington policy's building coverage limit for the building is $500,000.00. (Exhibit 1, p. 55 of 100).

18.     The amount of property insurance coverage purchased for the building did not comply with the Covington policy's coinsurance clause; that is, the building was not insured for 90% of its value. (Aff'd. Ojeda, para. 7).

19.     That the amount of property insurance coverage purchased for the building was not in compliance with the Covington policy's 90% coinsurance clause was determined by multiplying the undisputed RCV of the building ($791,745.15) by 90%, which results in $712,570.63, and by multiplying the undisputed ACV of

the building ($593,808.87) by 90%, which results in $534,427.98. (Aff'd. Ojeda, para. 7).

20.    At the time of the loss, the building was insured for only $500,000.00 (Covington policy, Commercial Property Coverage Part Declarations, p. 1 0f 1), which is less than 90% of the RCV and ACV values.  (Aff'd. Ojeda, para. 7).

21.    Because the building was not insured for 90% of its value at the time of the loss, the coinsurance clause in the Covington policy applies. (Covington policy, Building and Personal Property Coverage Form, p. 13 of 16, F.1.).

22.    The calculations applying the coinsurance clause in the Covington policy are as follows:

RCV:    $\dfrac{\$500,000.00}{\$791,745.15 \times 90\%} = \dfrac{\$500,000.00}{\$712,570.64} = .702$ or $70.168\%$

ACV:    $\dfrac{\$500,000.00}{\$593,808.87 \times 90\%} = \dfrac{\$500,000.00}{\$534,427.98} = .780$ or $77.965\%$

(Aff'd. Ojeda, para. 7).

23.    Applying the coinsurance clause (assuming there is coverage for this loss, which Covington denies), Covington would pay Quattry 70.168% of the RCV of the damage to the building, or 77.965% of the ACV of the damage to the building, depending upon whether the Covington policy's other provisions require payment of RCV or ACV. (Aff'd. Ojeda, para. 8).

## MEMORANDUM OF LAW

### I.   OVERVIEW

On September 14, 2016, plaintiff Samuel F. Quattry Jr., as Trustee of the Samuel F. Quattry, Jr. Living Trust ("Quattry"), made a claim against a Covington policy of property insurance for damages to a building in Orlando, Florida allegedly caused by "vibrations" from heavy equipment used during a road construction project in 2016. Covington denied coverage for the claim on several grounds. Thereafter, Quattry filed this action for alleged breach of the insurance contract.[1]

The building and personal property coverage form in the Covington policy of insurance contains a coinsurance clause, which states that if the building is not insured for 90% of its value at the time of a loss, Covington will not pay the full amount of the loss, but instead, it will pay a percentage of the loss calculated pursuant to a formula in the coinsurance clause. In this case, Covington determined the amount of insurance coverage purchased for Quattry's building was less than 90% of the building's value at the time of the loss, which activated the coinsurance clause. Quattry has not provided any testimony or evidence to contradict the calculations.

---

[1] On April 9, 2018, Quattry filed a complaint against Covington but later voluntarily dismissed it. On July 11, 2018, Quattry filed this action. Quattry's second amended complaint was filed on August 12, 2018. [Doc. 18].

Covington seeks partial summary judgment in its favor and a ruling that if, hypothetically, there is any coverage under the Covington policy for the damage to Quattry's building (which Covington denies), the co-insurance clause is enforceable to reduce the amount of insurance policy proceeds that may be owed by Covington to Quattry.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    The Covington Insurance Policy And Its Coinsurance Clause

At the time of the loss, Covington insured Quattry under a renewal policy of commercial general liability and property damage insurance, policy number VBA392726 00, effective May 1, 2016 through May 1, 2017 ("the Covington policy"). A certified copy of the Covington policy is attached to Covington's motion for summary judgment as Exhibit 1.

The Covington policy insured the property located at 1011-1023 W. Colonial Drive, Orlando, Florida 32804 ("the building"). (Covington policy, page 55 of 100; Commercial Property Coverage Part Declarations). At the time of the claimed loss, the Covington policy's coverage limit for property damage to the building was $500,000.00, subject to a $2,500.00 deductible and a 90% coinsurance provision. (*Id.*). The Covington policy states as follows:

*IMPORTANT NOTICE*

**FLORIDA NOTICE – COINSURANCE CONTRACT**

**THE RATE CHARGED IN THIS POLICY IS BASED UPON THE USE OF THE COINSURANCE CLAUSE ATTACHED TO THIS POLICY, WITH THE CONSENT OF THE INSURED.**

\*       \*       \*

(Covington policy, p. 12 of 100; GBA 909009 0407). The Covington policy further

states:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

\*       \*       \*

**F.   Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1.   Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the limit of Insurance for the property.  Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step (**1**);

> **(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (**2**); and
>
> **(4)** Subtract the deductible from the figure determined in Step (**3**).
>
> We will pay the amount determined in Step (**4**) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

(Covington policy, p. 69 of 100; Florida Notice, GBA 909009 0407, p. 1 of 1; Building and Personal Property Coverage Form, CP 00 10 10 12, p. 13 of 16). Quattry, in its application for insurance coverage with Covington, specifically requested that insurance for the building be provided pursuant to a 90% coinsurance arrangement. (Deposition of Andrea Rickheim, p. 48, l. 18-25; p. 49, l. 1-2; Exhibit 2 to motion for partial summary judgment. See, Exhibit 1 to depo. of Rickheim). The property section of the application states that Quattry's building will be insured in the amount of $500,000.00 at 90% coinsurance. (Exhibit 1 to depo. Rickheim, page 5 of 11).

Rickheim purchased insurance coverage for the property through the LRA Insurance Agency. (Depo, Rickheim, p. 46, l. 7-14, l.25; p. 47, l. 1-4). Rickheim dealt with Mr. Tomlinson [at LRA Insurance], who asked her questions about the property, to which she, Rickhem, provided honest information to the best of her knowledge. (*Id.,* p. 47, l. 5-13).

Rickheim identified exhibit 1 to her deposition as the commercial insurance application form (Depo. Rickheim. 48, l. 18-25; p. 49, l. 1-2), where she applied for insurance coverage for the properties owned by Quattry Properties, LLC as well as the Samuel F. Quattry, Jr. Living Trust. (*Id.,* p. 51, l. 15-25; p. 52, l. 1-4). Rickheim identified her signature on the insurance application form dated April 19, 2016. (*Id.,* p. 49, l. 3-11, 14; p. 50. l. 7-13; 24-25; p. 51, l. 1-4). She reviewed the application before she signed it, including the entire form and all of the information in it, and she made sure the information was correct. (*Id.,* p. 49, l. 15-17; p. 50, l. 1-3, 19-23; p. 51, l. 11-14; p. 54, l. 19-22; p. 55, l. 15-18).

Rickheim and Mr. Tomlinson discussed the amount of insurance coverage that she was purchasing on behalf of Quattry Properties, LLC and the Samuel F. Quattry, Jr. Living Trust for the 1011 to 1023 West Colonial Drive location, and they agreed on $500,000.00 in total coverage for the buildings that comprise that location. (Depo. Rickheim, p. 52, l. 18-25; p. 53, l. 4-6). After the [Covington] policy was issued, Rickheim received the policy and read it to make sure that the premium charged was correct and that the coverage and conditions of coverage were in line with her conversation with Mr. Tomlinson, and she confirmed that they were correct. (*Id.,* p. 55, l. 22-25; 56, l. 1-24).

**B.      Quattry's Claimed Loss To The Building**

Quattry's damages expert, Jennifer Yurgen with Proscope Consulting, provided an estimate to repair the alleged damage to the portions of the building fully owned by Quattry (1023 West Colonial Drive). The estimate was in the amount of $181,096.54 for replacement cost value (RCV). (Plaintiff's expert witness disclosure, Exhibit A, p. 26 of 176; Exhibit 3 to motion for partial summary judgment). After applying depreciation, Yurgen calculated the actual cash value (ACV) of the damage at $151,776.69. (*Id.*).

**C.      The Actual Value Of The Building Compared To Its Insured Value**

Covington determined that at the time of the loss the total adjusted RCV of the building at 1011 to 1023 W. Colonial Drive, Orlando, Florida was $791,745.15 and the total ACV was $593,808.87. (Affidavit of Betty S. Ojeda, para. 6, Exhibit 4 to motion for partial summary judgment).[2] Because no one on behalf of Quattry has calculated any different values for the RCV or the ACV of the building, the values calculated by Covington, through Ms. Ojeda, are undisputed. However, the

---

[2] The Orange County Property Appraiser assessed the 2016 market values of the 1011, 1015, 1021 and 1023 addresses (collectively the 1011 to 1023 building, or "the building") at $176,034.00, $173,430.00, $210,811.00 and $148,844.00, respectively, for a total assessed market value during the year 2016 of $709,119.00. (See, Property Records of the Orange County Property Assessor, attached as Exhibit 5 to motion for partial summary judgment).

Covington policy's building coverage limit for the building is only $500,000.00. (Exhibit 1, p. 55 of 100).

> **D.**  **The Insurance On The Building Was Not In Compliance With The Coinsurance Clause**

It is undisputed that at the time of the loss, the amount of property insurance purchased for the building was not in compliance with the Covington policy's coinsurance clause. In other words, the building was not insured for 90% of its value. This was determined by multiplying the undisputed RCV of the building ($791,745.15) by 90%, which results in $712,570.63, and by multiplying the undisputed ACV of the building ($593,808.87) by 90%, which results in $534,427.98. (Aff'd. Ojeda, para. 7). At the time of the loss, the building was insured for only $500,000.00, which is less than 90% of the RCV and ACV values.

> **E.**  **Applying The Formula In Covington Policy's Coinsurance Clause**

Because the building was not insured for 90% of its value at the time of the loss, the coinsurance clause in the Covington policy applies. Covington worked through steps 1 and 2 in the coinsurance clause using the undisputed evidence regarding the replacement value of the building at the time of the loss and the Covington policy's coverage limit.  Covington determined the percentage of the loss that would be owed by Covington under the coinsurance clause (if, hypothetically, there was coverage for the loss, which Covington denies). Those calculations are as follows:

| RCV: | $500,000.00 | = | $500,000.00 | = .702 or 70.168% |
|------|-------------|---|-------------|-------------------|
|      | $791,745.15 x 90% |   | $712,570.64 |                   |

| ACV: | $500,000.00 | = | $500,000.00 | = .780 or 77.965% |
|------|-------------|---|-------------|-------------------|
|      | $593,808.87 x 90% |   | $534,427.98 |                   |

Applying the coinsurance clause, the Covington policy would pay Quattry 70.168% of the RCV of the damage to the building, or 77.965% of the ACV of the damage to the building, depending upon whether the Covington policy's other provisions require payment of RCV or ACV. (*Id.,* para. 8).

## III.     ARGUMENT AND CITATION OF AUTHORITY

### A.     Standard On Motion For Summary Judgment

Federal Rule of Civil Procedure 56 (a) states:

> Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248–49 (1986) (emphasis in original). A fact is "material" only if it may affect the outcome of the suit under governing law. *Id.* at 248.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex,* 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1259-60 (11th Cir. 2004). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1164 (11th Cir. 2003).

In this case, the material facts regarding the Covington policy's coinsurance clause and its application to Quattry's claimed loss are undisputed. Those facts consist of the provisions in the Covington policy, including the coinsurance clause and the coverage limit for the building; Quattry's expert's estimate of the RCV and ACV of the alleged damages to the building (which estimate is considered to be true for purposes of this motion for partial summary judgment only);[3] and the unrebutted calculation by Covington of the RCV and ACV of the building at the time of the loss. Based upon these undisputed facts, Covington is entitled to partial summary

---

[3] Covington reserves the right to assert that the RCV and ACV of any damages that may be covered under the Covington policy are different than the amounts estimated by Quattry's expert.

judgment in its favor regarding the enforceability of the coinsurance clause and the percentage of the damages to Quattry's building that would be owed by Covington if there was coverage under the Covington policy for those damages, which Covington denies.

Specifically, Covington is entitled to a ruling that, if there is coverage under the Covington policy for damages to the building (which Covington denies), the Covington policy will pay no more than 70.168% of the RCV of the damage to the building, or 77.965% of the ACV of the damage to the building, depending upon whether the Covington policy's other provisions require payment of RCV or ACV.

Disputed issues remain as to causation and the amount of damage to the building, the RCV and ACV of the damage, and whether the damage is covered by the Covington policy.

### B.     Coinsurance Clauses Are Enforceable In Florida

Coinsurance clauses in property insurance policies are enforceable in Florida. The court in *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.,* 874 So. 2d 26 (Fla. 2d DCA 2004), explained:

> The purpose of coinsurance is to increase the risk to the insured when the insured purchases far less coverage than the full value of the property. See generally Couch on Insurance 3d § 220:3–24 (West Group 1999). When a coinsurance provision applies, the insurer does not pay the full amount of loss. Instead, the amount otherwise payable under the policy is reduced in proportion to the extent to which the property is underinsured. … Through coinsurance, the principle of

> indemnity is upheld by requiring the insured to assume his or her fair
> share of the risk of loss after the loss occurs.

*Id.,* 874 So.2d at 33, fn. 6. Florida has a statute that specifically authorizes coinsurance, Florida Statutes § 627.701(1). It provides:

> 627.701 Coinsurance contracts. - A property insurer may issue an insurance policy or contract covering either real or personal property in this state which contains provisions requiring the insured to be liable as a coinsurer with the insurer issuing the policy for any part of the loss or damage by covered peril to the property described in the policy only if:
>
> (1)   The following words are printed or stamped on the face of the policy, or a form containing the following words is attached to the policy: "Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the insured.";
>
> (2)   The coinsurance clause in the policy is clearly identifiable; and
>
> (3)   The rate for the insurance with or without the coinsurance clause is furnished the insured upon his request.

**C.     The Coinsurance Clause In The Covington Policy Is Enforceable**

Covington, as a surplus lines insurance carrier, does not have to comply with the requirements of Fla. Stat. Ann. § 627.701(1) regarding notifying the insured that it may be liable as a coinsurer in the event of a loss. Fla. Stat. § 626.913(4) states that, "[e]xcept as may be specifically stated to apply to surplus lines insurers, the provisions of chapter 627 do not apply to surplus lines insurance authorized under ss. 626.913-626.937, the Surplus Lines Law." In ***Essex Ins. Co. v. Integrated Drainage Sols., Inc.,*** 124 So. 3d 947, 951 (Fla. 2d DCA 2013), the court held that

in 2010, the Florida legislature enacted Fla. Stat. § 626.913(4) to "clarify[] that the … provisions of ch. 627, F.S., except where specifically stated, do not apply to surplus lines insurance." The coinsurance statute does not state that it applies to surplus lines insurance, and therefore, it does not apply here. Nevertheless, the coinsurance clause in the Covington policy does comply with Fla. Stat. Ann. § 627.701. It contains the exact language required by Fla. Stat. § 627.70(1) located in a prominent position in the Covington policy on a separate endorsement on an otherwise blank page, which states:

*IMPORTANT NOTICE*
_____

**FLORIDA NOTICE – COINSURANCE CONTRACT**

**THE RATE CHARGED IN THIS POLICY IS BASED UPON THE USE OF THE COINSURANCE CLAUSE ATTACHED TO THIS POLICY, WITH THE CONSENT OF THE INSURED.**
_____

(Covington policy, p. 12 0f 100; Ex. 1 to motion for partial summary judgment). In **QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.,** 94 So. 3d 541, 554 (Fla. 2012), the court enforced a coinsurance clause that was written in compliance with Fla. Stat. § 627.701 similar to the coinsurance provision in this case. Therefore, as a matter of law, the coinsurance clause in the Covington policy is enforceable against Quattry to reduce any potential payment for the claimed losses to its building.

20

**D.     Applying The Coinsurance Clause To Quattry's Claimed Loss**

Steps 1 and 2 of the coinsurance clause reads as follows:

> **(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;
>
> **(2)** Divide the Limit of Insurance of the property by the figure determined in Step (**1**);

As discussed above in the statement of facts section of this brief, the RCV and ACV values of the building at the time of the loss are undisputed. The RCV was $791,745.15 and the ACV was $593,808.87. (Aff'd. Ojeda, para. 6. Covington calculated those values and Quattry has not offered any different values or expert testimony to refute Covington's values. Also, the Covington policy's limit of insurance for the building is $500,000.00. Using these figures, the calculations in steps 1 and 2 of the coinsurance clause are as follows:

RCV:  $\dfrac{\$500,000.00}{\$791,745.15 \times 90\%}$  =  $\dfrac{\$500,000.00}{\$712,570.64}$   = .702 or 70.168%

ACV:  $\dfrac{\$500,000.00}{\$593,808.87 \times 90\%}$  =  $\dfrac{\$500,000.00}{\$534,427.98}$   = .780 or 77.965%

Therefore, applying the coinsurance clause, the Covington policy would pay Quattry 70.168% of the RCV of any covered damage to the building, or 77.965% of the ACV of any covered damage to the building, minus the deductible, depending upon whether the Covington policy's other provisions require payment of RCV or ACV. (Aff'd. Ojeda, para. 8).

## IV.  CONCLUSION

The facts material to the enforceability and application of the coinsurance clause in the Covington policy are undisputed. Covington is entitled to partial summary judgment in its favor as a matter of law and a ruling that the coinsurance clause in the Covington policy is enforceable, the amount of insurance coverage on Quattry's building at the time of the loss was not in compliance with the coinsurance clause, and Covington is entitled to reduce the amount it owes Quattry (if it owes anything, which Covington denies) according to the percentages calculated by Covington based upon the undisputed RCV and ACV values of the building at the time of the loss.

WHEREFORE, defendant Covington Specialty Insurance Company respectfully requests that the Court enter an order granting partial summary judgment in its favor and a ruling that, if there is coverage under the Covington policy of insurance for the damage to Quattry's building (which Covington denies), the co-insurance clause in the Covington policy is enforceable to reduce the amount of insurance policy proceeds owed by Covington to Quattry.

Respectfully submitted this 28th day of June, 2019.

/s/ Wayne D. Taylor
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*
MICHELLE A. SHERMAN
Georgia Bar No. 835980

*Admitted pro hac vice*
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway,
Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

-and-

J. RICHARD YOUNG
Florida Bar No. 0563250
MOZLEY, FINLAYSON & LOGGINS LLP
4767 New Broad Street
Orlando, Florida 32814
Tel: (407) 514-2765 Ext. 2317
Fax: (404) 250-9355
ryoung@mfllaw.com

*Attorneys for Defendant Covington Specialty Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **MOTION OF DEFENDANT COVINGTON SPECIALITY INSURANCE COMPANY FOR PARTIAL SUMMARY JUDGMENT** using the Court's CM/ECF System, which will automatically send a copy of same to the following counsel of record for Plaintiff:

Christine M. Deis, Esq.
Matthew G. Struble, Esq.
Struble, P.A.
101 Northeast Third Avenue, Suite 1110
Fort Lauderdale, Florida 33301
cdeis@strublelawfirm.com
mstruble@strublelawfirm.com

*Attorneys for Plaintiff Samuel F. Quattry, Jr., As Trustee of the Samuel F. Quattry, Jr. Living Trust*

This 28th day of June, 2019.

*/s/ Wayne D. Taylor*
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*